T.C. Memo. 2012-280

UNITED STATES TAX COURT

HUMBERTO S. DIAZ AND CLARA D. DIAZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20338-09.                    Filed October 2, 2012.

    <u>Held</u>:  Ps, who concede deficiencies in tax attributable to their
failure to pay self-employment tax on P-H's compensation from the
World Bank, do not qualify for the I.R.C. sec. 6664(c) reasonable
cause exception to I.R.C. sec. 6662(a) accuracy-related penalties for
failure to show the resulting underpayments in tax were due to
reasonable cause and that they acted in good faith in relying on
incorrect advice from an AARP Tax-Aide volunteer.  P-H did not
provide the volunteer with necessary and accurate information and did
not rely in good faith on the volunteer's advice.  The second and third
prongs of the test in <u>Neonatology Assocs., P.A. v. Commissioner</u>, 115
T.C. 43, 99 (2000), <u>aff'd</u>, 299 F.3d 221 (3d Cir. 2002), are not
satisfied.

**[*2]**   Bryon A. Christensen, Roxanne Grossman, John P. Marston, Brendan T. O'Dell, and Cary Douglas Pugh, for petitioners.

Jeffrey E. Gold, Stephen C. Huggs, and Lindsey D. Stellwagen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  Respondent determined deficiencies in, and accuracy-related penalties with respect to, petitioners' Federal income tax as follows:[1]

|  |  | Penalty |
| Year | Deficiency | Sec. 6662(a) |
| 2006 | $6,899 | $1,380 |
| 2007 | 3,124 | 625 |

Petitioners do not contest the deficiencies in tax.  They contest only the penalties.  They do so on the grounds that there was reasonable cause for, and they acted in good faith with respect to, the underpayments in tax resulting from their omitting from their 2006 and 2007 returns petitioner husband's (Mr. Diaz's) self-employment tax.

---

[1]Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue.  We round all dollar amounts to the nearest dollar.

**[*3]** FINDINGS OF FACT

Introduction

Some facts are stipulated and are so found.  At the time they filed the petition, petitioners resided in Virginia.  They are calendar year taxpayers.

Background

In 1995, Mr. Diaz, originally a Chilean national, retired from a career working for the Chilean Air Force.  His last assignment was in Washington, D.C.  In 2001, he went to work in the United States for the International Bank for Reconstruction and Development (World Bank).  In 2004, he became a U.S. citizen, and, because of that change in status, he became subject to Federal taxation as a citizen.  Because he was a U.S. citizen, the World Bank switched from paying him on a net basis (no additional compensation to cover estimated U.S. tax obligations) to paying him on a gross basis (compensation includes additional amounts to cover estimated U.S. tax obligations).[2]

---

[2]International organizations, such as the World Bank, are exempted from Social Security and Medicare payments and withholding and, therefore, do not withhold from employees nor pay the employer's share of those taxes.  See sec. 3121(b)(15).  Moreover, those employers withhold no employee Federal income tax.  See sec. 3401(a)(5); sec. 31.3401(a)(5)-1(b), Employment Tax Regs.  Thus, U.S. citizen employees of international organizations are required to report income from employment by the organization as self-employment income, and they are liable for self-employment tax in addition to regular income tax with respect to that

(continued...)

**[\*4]** <u>The World Bank's Efforts To Educate Their Employees</u>

The World Bank has taken several steps to ensure that its U.S. citizen employees understand their unusual tax responsibilities, including operating a tax services desk on its premises. The World Bank also advises employees of their tax liabilities through employment agreements and supplementary certifications. Several times during the years in issue, Mr. Diaz signed new employment agreements, each of which stated on its first page:

> The fee [compensation] is based on the understanding that you will assume any tax obligation which may be imposed on your the [sic] World Bank income. United States citizens working in the United States with international organizations are covered for Social Security under the U.S. Social Security Act and are liable for Social Security at the "self-employed" rate.

Mr. Diaz read those agreements and concluded that he had an obligation to pay self-employment tax on his World Bank compensation.

Generally, when Mr. Diaz signed a new employment agreement, he also signed a World Bank certification stating the following: "I certify that if I am a United States citizen I have so advised the World Bank Group for income tax reporting purposes, even if I am also a citizen of another country. If my

---

[2](...continued)
income. Sec. 1402(c)(2)(C). Unlike their U.S. citizen counterparts, non-U.S. citizen employees of international organizations are exempt from U.S. taxation. Secs. 893(a)(1), 1402(c)(2)(C).

**[*5]** remuneration is designated gross, I certify that I am subject to tax thereon and will assume the tax obligation that will be imposed."

In January 2007, Mr. Diaz received from the World Bank a form (bank form) containing images of his Form W-2, Wage and Tax Statement, for tax year 2006 (2006 Form W-2). The 2006 Form W-2 identified his employer as the World Bank, and it identified him as the employee. Box 1, labeled "Wages, tips, other compensation", showed $53,230; boxes 2 through 6, labeled, respectively, "Federal Income tax withheld", "Social Security wages", "Social Security tax withheld", "Medicare wages and tips", and "Medicare tax withheld", were blank. The bank form, in space outside the images of the 2006 Form W-2, contained the following instruction:

> Schedule SE (Self-Employment Tax) must be attached to your Form 1040. U.S. Staff must pay social security and medicare tax at the self-employment rate on wages for services performed inside the U.S. Please refer to Instructions for Schedule SE, "U.S. Citizens Employed by Foreign Governments or International Organizations," at www.irs.gov.

On February 5, 2007, approximately 200 World Bank employees attended a two-hour presentation by the Internal Revenue Service (IRS) concerning World Bank employee tax obligations. The presentation took place in the World Bank's auditorium, and handouts were provided to attendees. The presentation was

**[*6]** simulcast to World Bank employees' individual desktop computers. At that meeting, the IRS explained that all World Bank employees who are U.S. citizens are required to prepare and submit, with their Federal tax returns, a Schedule SE, Self-Employment Tax, and pay self-employment tax because the World Bank does not withhold the employee's share and does not pay the employer's share of Social Security and Medicare taxes.

Preparation of Mr. Diaz's 2006 Joint Federal Income Tax Return

Mr. Diaz did not prepare petitioners' 2006 Federal income tax return. He visited an AARP Foundation tax assistance site and was assisted by a volunteer participating in the AARP Tax-Aide program. The AARP Tax-Aide program helps low-to-moderate-income taxpayers, particularly those 60 or older.[3] AARP Tax-Aide volunteers are trained and IRS certified to understand individual Federal tax issues. Mr. Diaz believed that he owed self-employment tax on his World Bank wages and checked a box on the AARP Tax-Aide Intake and Interview Form that he filled out indicating that he had self-employment income for 2006. He told the volunteer who assisted him that he was a U.S. citizen and provided him with the copies of his 2006 Form W-2 to accompany his Federal and State returns. He had

---

[3]See About AARP Foundation Tax-Aide, http://www.aarp.org/money/taxes/info-2004/about_aarp_taxaide.html (last visited Aug. 7, 2012).

**[\*7]** cut those copies from the bank form. Therefore, he did not provide the aide with the portion of the bank form advising him of his liability, as a U.S. Citizen, for "Social Security at the 'self-employed' rate." He told the volunteer that he worked for the World Bank and paid self-employment tax. The volunteer asked why he paid self-employment tax, adding that, normally, World Bank employees do not pay taxes. He responded that, for 2004 and 2005, after he had become a U.S. citizen, he paid self-employment tax. The volunteer left his interview with Mr. Diaz and discussed with another volunteer whether individuals who work at the World Bank do or do not pay self-employment tax. The two individuals disagreed, one saying that Mr. Diaz did have to pay self-employment tax and the other saying that he did not. The two individuals called over a third individual, who appeared to Mr. Diaz to be a supervisor. They all looked in a book which, apparently, did not resolve the issue. The supervisor then asked: "What did the W-2 form say? What do you see there? You have to follow the instructions, and if there's nothing here you put nothing there. This is the W-2 form in the World Bank." The volunteer returned to Mr. Diaz and said: "Okay, you're not going to pay the self-employment tax."

The AARP Tax-Aide prepared petitioners' 2006 joint Form 1040, U.S. Individual Income Tax Return, and petitioners signed and filed the return. The

**[*8]** return is dated April 16, 2007. The return did not include a Schedule SE and showed no liability for self-employment tax, and petitioners paid no self-employment tax. While Mr. Diaz harbored doubts about the position petitioners were taking on their return with respect to self-employment tax, he took no action to further investigate his self-employment tax obligation because he did not believe that he had the time to do so. He testified that, had he had more time, he would have investigated further.

Petitioners do not know the name of the volunteer (or of anyone else) at AARP Tax-Aide from whom Mr. Diaz requested assistance in preparing their 2006 Form 1040.

Preparation of Petitioners' 2007 Joint Federal Income Tax Return

After receiving from the World Bank a Form W-2 for tax year 2007 (2007 Form W-2), Mr. Diaz prepared petitioners' 2007 joint tax return. Like the 2006 Form W-2, the 2007 Form W-2, had an entry in box 1 but no entries in boxes 2 through 6. Relying on AARP Tax-Aide's preparation of the 2006 joint tax return, petitioners did not attach to the 2007 joint Form 1040 a Schedule SE, showed no liability for self-employment tax, and paid no self-employment tax for 2007.

**[\*9]** <u>Deficiencies</u>

Respondent determined deficiencies in tax for 2006 and 2007 on the basis of petitioners' failure to pay self-employment tax. Respondent also determined an accuracy-related penalty under section 6662(a) for each of those years.

OPINION

I.  <u>Imposition of the Accuracy-Related Penalty</u>

A.  <u>Introduction</u>

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty equal to 20% of the portion of an underpayment of tax attributable to, among other things, negligence or disregard of rules or regulations (without distinction, negligence) or any substantial understatement of income tax.

The Commissioner bears the burden of production. <u>See</u> sec. 7491(c). To meet his burden, he must produce evidence regarding the appropriateness of imposing the penalty. <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). The taxpayer's concessions may be taken into account in determining whether the Commissioner has met that burden. <u>Oria v. Commissioner</u>, T.C. Memo. 2007-226. Once the Commissioner carries his burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are

**[*10]** inappropriate because of reasonable cause. See Higbee v. Commissioner, 116 T.C. at 447-448.

Respondent determined the accuracy-related penalty for each year in issue, alternatively, on the grounds of negligence or substantial understatement of income tax. Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one of the grounds set forth in section 6662(b). Sec. 1.6662-2(c), Income Tax Regs.

B. Substantial Understatement of Income Tax

Section 6662(d)(1)(A) defines "substantial understatement of income tax" as an amount exceeding the greater of 10% of the tax required to be shown on the return or $5,000.

Petitioners concede that there is a substantial understatement of income tax for 2006, and respondent concedes that there is no substantial understatement of income tax for 2007. We accept the parties' concessions and find that, barring reasonable cause and good faith, petitioners are liable for the 20% accuracy-related penalty for substantial understatement of income tax for 2006.

**[\*11]** C.    Negligence Penalty

We need address petitioners' liability for the section 6662(a) penalty on the ground of negligence only for 2007.  Section 6662(a) imposes a penalty for negligence or disregard of rules or regulations.  Negligence is defined as a "lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances".  Viralam v. Commissioner, 136 T.C. 151, 173 (2011). Negligence is strongly indicated where "[a] taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return which would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances".  Sec. 1.6662-3(b)(1)(ii), Income Tax Regs.

Mr. Diaz admits that he believed he had a duty to report and pay self-employment tax for each year in issue.  Despite that belief, petitioners did not attach a Schedule SE to either their 2006 or 2007 joint return, nor did they pay the self-employment tax due.  Petitioners concede that they improperly failed to report and pay self-employment tax for both 2006 and 2007.  Their concession is sufficient for us to conclude that respondent has carried his burden of production. Accordingly, we find that, barring a showing of reasonable cause and good faith, petitioners are liable for the 20% accuracy-related penalty for negligence for 2007.

**[\*12]** D.    Reasonable Cause and Good Faith Defense

        1.    Introduction

With exceptions not here relevant, a taxpayer may avoid the section 6662(a) penalty by showing that he acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  Reasonable cause requires that the taxpayer exercise ordinary business care and prudence as to the disputed item.  United States v. Boyle, 469  U.S. 241, 246 (1985).  The term "good faith" has no precise definition but means, among other things, (1) an honest belief and (2) the intent to perform all lawful obligations.  E.g., United States v. Hirschfeld, 964 F.2d 318 (4th Cir. 1992).   Those determinations are made on a case-by-case basis, taking into account all pertinent facts and circumstances, including the taxpayer's knowledge and experience.  Racine v. Commissioner, T.C. Memo. 2006-162, aff'd, 493 F.3d 777 (7th Cir. 2007); sec. 1.6664-4(b)(1), Income Tax Regs.  "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."  Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the taxpayer's efforts to assess the proper liability.  Id.

[*13] A taxpayer may demonstrate reasonable cause through good faith reliance on the advice of an independent professional, such as a tax adviser, a lawyer, or an accountant, as to the item's tax treatment. Boyle, 469 U.S. at 251; Canal Corp. & Subs. v. Commissioner, 135 T.C. 199, 218 (2010). To prevail, the taxpayer must show that he: (1) selected a competent adviser with sufficient expertise to justify reliance, (2) supplied the adviser with necessary and accurate information, and (3) actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

### 2. Petitioners' Argument

Petitioners assert that they are not liable for the section 6662(a) penalty for either year in issue because they reasonably relied on the advice of an AARP Tax-Aide volunteer in preparing their 2006 and 2007 joint tax returns. Specifically, petitioners contend that they relied on the volunteer's advice that Mr. Diaz was not liable for self-employment tax for 2006 and that he provided to the volunteer all necessary information, including his status as a U.S. citizen, his employment at the World Bank, and his Form W-2 for the 2006 tax year.

### 3. Respondent's Argument

Respondent argues that petitioners have not shown reasonable reliance on the volunteer because they: (1) have not identified the volunteer nor shown that he

**[*14]** rendered a judgment concerning the tax treatment of the item at issue, and (2) did not provide the volunteer with all necessary and accurate information. As to his second argument, respondent contends that Mr. Diaz failed to provide the volunteer with all necessary information because he provided the 2006 Form W-2 without the special instructions on the bank form regarding self-employment tax obligations of World Bank employees.

Finally, respondent argues that the volunteer was not a professional and was not a competent adviser with sufficient expertise to justify petitioners' reliance. He contends that the volunteer would not have been familiar with returns involving international organizations (such as the World Bank) that are exempted from Federal income and FICA tax withholding for their U.S. citizen employees yet still provide to those employees a Form W-2 with instructions to pay self-employment tax.

　　　4.　　Analysis

　　　　　a.　　Supplying Adviser With Necessary Information

We first address whether petitioners failed to satisfy the second prong of the Neonatology Assocs. test; viz, that Mr. Diaz supplied the AARP Tax-Aide volunteer with necessary and accurate information. The parties have stipulated: "The only information necessary to make a proper determination as to whether

[*15] Petitioners were liable for self-employment tax on Mr. Diaz's World Bank income for 2006 is a copy of Mr. Diaz's complete 2006 Form W-2 and knowledge of the fact that Mr. Diaz was a U.S. citizen".  The parties disagree as to the meaning of the adjective "complete".  Giving each word in the sentence proper weight, we find that the adjective "complete" suggests more than just the images of the 2006 Form W-2 that petitioner cut from the bank form and furnished to the AARP volunteers. We find that, in context, the "complete 2006 Form W-2" could only  mean the bank form in its entirety, which, in addition to the images of the 2006 Form W-2, contained specific instructions regarding the obligation of a U.S. citizen employee of the World Bank to file a Schedule SE.

Since Mr. Diaz did not supply the AARP volunteers with the complete 2006 Form W-2, petitioners cannot rely on the stated stipulation to show that they supplied the AARP volunteers with the necessary information to determine whether Mr. Diaz was liable for self-employment tax.  Putting the stipulation aside, petitioners argue that the AARP volunteer's knowledge that Mr. Diaz was a U.S. citizen who worked at the World Bank is sufficient, as a matter of law, for him to have properly determined that petitioner owed self-employment tax on his World Bank income.  Petitioners cite no authority for that claim, nor do we interpret the necessary-and-accurate-information criterion of Neonatology Assocs. as requiring

**[\*16]** such a minimalist approach to the meaning of the term "necessary and accurate". Indeed, the failure to provide the AARP volunteer with the caveat with respect to self-employment tax embodied in the bank form would seem to defy the warning in section 1.6664-4(c)(1)(i), Income Tax Regs., that the requirement to disclose all pertinent facts and circumstances (as the basis for advice) includes facts that the taxpayer knows, or reasonably should know, to be "relevant" to the tax treatment of an item. Had Mr. Diaz provided the AARP volunteers with the "complete 2006 Form W-2", they would have been alerted to the possible distinction between U.S. citizen and non-U.S. citizen World Bank employees and, very likely, they would have correctly advised him of the need to file a Schedule SE and pay self-employment tax on his World Bank income, and, therefore, would have included a Schedule SE in preparing his 2006 return.

Petitioners have failed to show that Mr. Diaz supplied the AARP Tax-Aide volunteers with necessary and accurate information and, for that reason, they fail to show that they satisfy the second prong of the Neonatology Assocs. test.

### b. Good Faith Reliance on Advice

The third prong of the Neonatology Assocs. test is that the taxpayer actually relied in good faith on the adviser's judgment. The parties have stipulated, and we have found, that AARP Tax-Aide volunteers are trained and IRS certified to

**[*17]** understand individual Federal tax issues. That does not mean, of course, that the volunteers are in every instance qualified to assist an individual taxpayer with return preparation. Principally, the AARP Tax-Aide assistance program is intended to help elderly, low-to-moderate-income taxpayers. There are undoubtedly many individuals who are not typical of that clientele. Petitioners presented an atypical issue, and, because of his training, the unidentified volunteer who assisted Mr. Diaz undoubtedly recognized it as such. He had in front of him petitioners' 2006 Form W-2, which showed that Mr. Diaz had earned substantial income from employment but that his employer had withheld neither income, Social Security, nor Medicare taxes. He doubtless understood that individuals receiving Forms W-2 generally have at least potential income tax and Social Security tax obligations, but he told Mr. Diaz that, normally, individuals employed by the World Bank do not pay taxes, perhaps drawing upon his familiarity with the U.S. tax treatment of non-U.S. citizen World Bank employees. When Mr. Diaz told him that, since he had become a U.S. citizen, he paid self-employment tax, the volunteer went off to discuss Mr. Diaz's situation with another volunteer. Mr. Diaz overheard the disagreement between the volunteer assisting him and the other volunteer as to whether he was required to pay self-employment tax. An individual that Mr. Diaz assumed to be a supervisor was called over, and all three looked in a book, but apparently found no

[*18] satisfactory answer. The supervisor then told the volunteer assisting Mr. Diaz to follow the instructions for the Form W-2. The volunteer returned to Mr. Diaz and told him that he did not have to pay self-employment tax. That advice was contrary to what Mr. Diaz understood from the employment agreements with the World Bank that he had read and signed. It was contrary to the bank form, which contained his Form W-2 and instructed that he, as a U.S. citizen, must pay Social Security and Medicare tax at the self-employment rate on wages for services performed inside the United States. It was also contrary to the widely distributed February 7, 2007, IRS presentation at the World Bank in which the IRS explained that all World Bank employees who were U.S. citizens were required to prepare and submit a Schedule SE with their Federal tax returns and pay self-employment tax because the World Bank did not withhold the employee's share and pay the employer's share of Social Security and Medicare taxes. Indeed, Mr. Diaz testified that, following his visit to AARP Tax-Aide, he had his doubts whether the volunteer who assisted him was right or whether the World Bank was right.

Indeed, Mr. Diaz testified that he would have further investigated his self-employment tax obligation if he had thought he had more time. In fact, petitioners could have obtained more time to file their 2006 return by requesting the automatic

**[\*19]** six-month extension of time to file their return that was available to all individual taxpayers.  See Form 4868, Application for Automatic Extension of Time To File U.S. Individual Income Tax Return, 2006.[4]  Whether Mr. Diaz was aware that he could have requested an extension of time to file is beside the point.  He had good reason to understand that the volunteer who assisted him was not certain how to deal with his situation and that the volunteer's advice was contrary to the positions of both his employer, the World Bank, and the IRS.  Despite his admitted uncertainty, he did not further investigate because he erroneously thought that he had not left himself adequate time to do so.  Thus, he did not rely on the volunteer's advice solely upon the basis of a good faith belief that it was correct.  He relied upon it, at least in part, because he did not believe that he had time to question it.

Moreover, Mr. Diaz went to some trouble to separate copies of his 2006 Form W-2 from the portion of the bank form including the instructions advising that U.S. citizen employees are required to file a Schedule SE.  While we are cognizant of his testimony that he told the volunteer that he worked for the World

_____

[4]Petitioners' 2006 Form 1040 is dated April 16, 2007, which, as pertinent to petitioners, is the last day on which they could have requested an automatic extension of time to file.

**[\*20]** Bank and paid self-employment tax, we do not dismiss the possibility that he intentionally withheld those instructions from the volunteer.

Therefore, we find that petitioners filed a 2006 income tax return that Mr. Diaz, at best, doubted was accurately prepared and, at worst, knew (or strongly suspected) was incorrect.[5] Petitioners have failed to convince us that, in relying on the AARP Tax-Aide volunteer and in failing to file Schedule SE and to pay self-employment tax on Mr. Diaz's 2006 compensation from the World Bank, they acted in good faith.

For 2007, we reach the same result for substantially the same reasons, but with somewhat more force, since, for that year's return, petitioners have no excuse that they lacked time to question the volunteer's advice that Mr. Diaz need not pay self-employment tax.

5. Conclusion

Petitioners have failed to demonstrate that they acted with reasonable cause and in good faith in failing to satisfy their 2006 and 2007 self-employment tax obligations with respect to Mr. Diaz's World Bank wages for those years.

_____

[5]That, among other facts, distinguishes the facts of this case from those in Chien v. Commissioner, T.C. Memo. 2012-277 (taxpayer, an employee of the International Monetary Fund, had reasonable cause for, and acted in good faith with respect to, underpayment in self-employment tax).

**[\*21]** II.    <u>Conclusion</u>

We sustain the deficiencies in tax and section 6662(a) accuracy-related penalties respondent determined.

<u>Decision will be entered for</u>

<u>respondent</u>.