JOHN A. KRZEPINA, a.k.a. JOHN A. KREPINA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Krzepina v. Commissioner
Docket No. 25356-91.
United States Tax Court
T.C. Memo 1993-356; 1993 Tax Ct. Memo LEXIS 371; 66 T.C.M. (CCH) 360; August 16, 1993, Filed *371 Decision will be entered under Rule 155. For petitioner: Walter J. McNamara III. For respondent: Marc A. Shapiro. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiency in, and additions to, petitioner's Federal income tax: Additions to Tax Section
Section
Section
Section
Year
Deficiency
6651(a)(1) [1]
6653(a)(1)(A)
6653(a)(1)(B)
6654(a)
1987
$ 10,799.00
$ 2,411.50
$ 539.95
*
$ 380.00
The issues remaining for decision are: [2]
(1) Is petitioner liable for the addition to tax for failure to file for 1987? We hold that he is. (2) Is petitioner liable for the additions to tax for negligence for 1987? We hold that he is. *372 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner was a resident of Willoughby, Ohio, at the time of the filing of the petition herein. During 1987, petitioner was both a 50-percent shareholder in and an employee of Electritech Systems Corporation (Electritech), [3] an S corporation, which was engaged in providing electrical contracting services (e.g., lighting and sign maintenance) to retail stores. As such, petitioner materially participated in Electritech's business during that year. Sometime prior to April 15, 1988, petitioner received a Form W-2 from Electritech showing that he received $ 9,600 in wages for 1987. Petitioner also *373 received a Form W-2 from Continental Lighting Serv. Inc. showing that he received $ 1,458.33 in wages for 1987. Thus, petitioner received during 1987 Form W-2 wages in the total amount of $ 11,058. On or before March 15, 1988, Electritech filed Form 1120S (U.S. Income Tax Return for an S Corporation) for the year 1987. Included as part of Electritech's Form 1120S for 1987 was a Schedule K-1 prepared in respect of petitioner as a 50-percent shareholder of that company. This schedule indicated that petitioner's distributive share for 1987 of Electritech's ordinary income, interest, and section 179 expense deduction was $ 40,774, $ 87, and $ 2,880, respectively. On April 15, 1988, petitioner and his spouse Kimberly Krzepina (spouse) were granted an automatic extension of time until August 15, 1988, within which to file their joint Federal income tax return for 1987. On August 15, 1988, petitioner and his spouse were granted an extension of time until October 15, 1988, within which to file their joint Federal income tax return for 1987. Although petitioner was aware that the extension of time within which to file a Federal income tax return for 1987 expired on October 15, 1988, *374 he did not file such a return on or before that date. On March 14, 1991, the examination division of the Internal Revenue Service (Service) prepared a substitute for return for petitioner for 1987. Thereafter, the Service sent a letter, dated March 29, 1991 (March 29 letter), to petitioner in which it stated, among other things, that petitioner had not responded to a prior Service request that petitioner file an income tax return for 1987. Attached to the March 29 letter were computations prepared by the Service showing amounts of proposed tax, penalties, and interest for petitioner's 1987 tax year. The March 29 letter informed petitioner that if he did not agree with the Service's computations, he had several courses of action available to him, including filing a Federal income tax return for 1987, explaining why he was not required to file such a return, or appealing the determinations proposed by the Service. On or about April 30, 1991, the Service received correspondence (April 30 correspondence) from petitioner regarding his Federal income tax return for 1987. In response to petitioner's April 30 correspondence, the Service sent him a letter, dated May 17, 1991 (May 17 *375 letter), in which it acknowledged having received petitioner's April 30 correspondence and advised him that it had no record of a return's having been filed by petitioner for 1987. Attached to the May 17 letter was a Service Form 886-A (Form 886-A) on which there was a handwritten note from a Service representative (Service note). The Service note suggests that the April 30 correspondence which petitioner sent to the Service included a document which purported to be a joint Federal income tax return for 1987 for petitioner and his spouse. The Service note further stated that, in order for the Service to consider the return for 1987 which the Service apparently received on or about April 30, 1991, as the original return for petitioner and his spouse, it would be necessary for both petitioner and his spouse to sign the return with original signatures. On or about June 10, 1991, the Service Center in Cincinnati, Ohio (Cincinnati Service Center), received from petitioner a copy of a joint Federal income tax return for 1987 for petitioner and his spouse (June 10 Form 1040). Attached to the June 10 Form 1040 was a copy of Form 886-A that the Service had sent petitioner with the May *376 17 letter. Petitioner wrote a reply on that copy, dated June 3, 1991, in which he indicated that he and his spouse had filed for extensions through their accountant and that they had filed their 1987 Federal income tax return on or about January 7, 1989. The June 10 Form 1040 did not contain original signatures for petitioner and his spouse, although it contained their copied signatures. The date appearing next to such copied signatures was January 7, 1989. On or about August 17, 1992, the Cincinnati Service Center received a copy of a joint Federal income tax return for 1987 for petitioner and his spouse (August 17 Form 1040), which contained no signatures for them. Attached to the August 17 Form 1040 were copies of (1) the Forms W-2 which petitioner received from Electritech and from Continental Lighting Serv. Inc., (2) the two applications seeking the extensions of time within which to file the 1987 tax return of petitioner and his spouse, which were granted by the Service, and (3) a "speed memo" from the law firm of McNamara, Lucci, Plasco, Todoroff & Loxterman, dated August 11, 1992, which stated, among other things, "Enclosed please find: copy of taxpayers' [petitioner's *377 and his spouse's] 1987 Return as Requested." The names, address, social security numbers, filing status, and exemptions claimed by petitioner and his spouse, as set forth on the June 10 and August 17 Forms 1040, are identical as are the dollar amounts set forth on lines 7 through 65 of such forms and on Schedules B and E that were attached thereto. The dollar amounts reflected on the June 10 and August 17 Forms 1040 regarding petitioner's distributive share of income and deductions from Electritech are identical to the dollar amounts set forth on the Schedule K-1 for petitioner that was attached to Electritech's 1987 Form 1120S. Both the June 10 and the August 17 Forms 1040 contained a copied signature of Donald A. Jesko, C.P.A. The date appearing next to such copied signature was January 6, 1989. The only return for petitioner's 1987 tax year that is referred to in the Service's transcript of account for that year is the substitute for return which the Service prepared on March 14, 1991. Such transcript of account does not indicate that any return was received from petitioner for his 1987 tax year. Petitioner did not have a registered mail receipt, a certified mail receipt, *378 or any other documentation to substantiate the mailing or filing by him, or the receipt by the Service, of his 1987 Federal income tax return in January 1989. OPINION Addition to Tax For Failure to File
Section 6651(a)(1) imposes an addition to tax for the failure to file timely a required return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". [4] Thus, in order to avoid the addition to tax for failure to file a return, petitioner must establish both that his failure to file timely (1) was due to reasonable cause, and (2) did not result from willful neglect. Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985); see Chilingirian v. Commissioner, 918 F.2d 1251, 1255 (6th Cir. 1990), affg. T.C. Memo. 1986-463; Estate of Geraci v. Commissioner, 502 F.2d 1148, 1149 (6th Cir. 1974), affg. per curiam T.C. Memo. 1973-94. *379 It is undisputed that petitioner did not file his Federal income tax return for 1987 on or before October 15, 1988, the last date on which he could have timely filed that return. There is, however, a dispute between the parties as to whether petitioner filed his 1987 return on or about January 7, 1989. Petitioner contends that he did file his 1987 return on or about that date and that, in any event, his failure to file timely on or before October 15, 1988, was due to reasonable cause and not due to willful neglect. Therefore, petitioner argues, he should not be liable for the addition to tax imposed by section 6651(a)(1). Respondent takes the position that petitioner did not file his 1987 return on or about January 7, 1989, or on any other date, and that his failure to file timely warrants imposition of the maximum addition to tax of 25 percent of the amount required to be shown on the return as tax that is prescribed by section 6651(a)(1). If we were to find that petitioner's failure to file timely his 1987 return was due to reasonable cause and did not result from willful neglect, it would not be necessary to resolve the factual question whether petitioner filed his 1987 return *380 on or about January 7, 1989, since no addition to tax would in any event be imposed under section 6651(a)(1). In contrast, if we were to conclude that petitioner has not carried his burden of proving that his failure to file timely his 1987 return was due to reasonable cause and not due to willful neglect, the factual issue whether petitioner filed that return on or about January 7, 1989, would become significant in determining the amount of the addition to tax to be imposed by section 6651(a)(1). This is because the addition to tax prescribed by section 6651(a)(1) is equal to five percent of the amount required to be shown as tax on the return if the failure is for not more than one month, with an additional five percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. Thus, if petitioner did in fact file his 1987 return on or about January 7, 1989, the maximum addition to tax that could be imposed under section 6651(a)(1) would be 15 percent (and not 25 percent) of the amount required to be shown on the return as tax. [5]
*381 Since we conclude below that petitioner has not carried his burden of establishing that his failure to file timely his 1987 return was due to reasonable cause and did not result from willful neglect, we will decide whether, as asserted by petitioner, he (and his spouse) did in fact file that return on or about January 7, 1989. The only evidence presented on this question was the uncorroborated testimony of petitioner. We are not required to, and do not, accept petitioner's self-serving testimony that he filed his 1987 return on or about January 7, 1989, especially in the absence of corroborating evidence such as certified or registered mail receipts or other documentation to substantiate that he mailed the 1987 return on or about January 7, 1989. [6] *383 See Estate of DeNiro v. Commissioner, 746 F.2d 327, 331 (6th Cir. 1984), affg. in part and revg. in part T.C. Memo. 1982-497; DiMauro v. United States, 706 F.2d 882, 885 (8th Cir. 1983); Griffin v. United States, 588 F.2d 521, 530 (5th Cir. 1979); Geiger v. Commissioner, 440 F.2d 688, 689 (9th Cir. 1971), *382 affg. per curiam T.C. Memo. 1969-159; Sharwell v. Commissioner, 419 F.2d 1057, 1060 (6th Cir. 1969), vacating and remanding on other grounds T.C. Memo. 1968-69. This is particularly true in cases such as the instant case where we find petitioner's testimony to be contradicted by other portions of the record and therefore not credible or trustworthy. For example, petitioner testified that he filed the 1987 return on January 7, 1989. [7] This testimony is contradicted by his allegations in the petition that he filed his 1987 return within the extended time period which he obtained from the Service. Petitioner's testimony also is inconsistent with the Service transcript of account for petitioner's 1987 tax year, which does not indicate that a return was filed on or about January 7, 1989. [8]
*384 Based on the record presented and our assessment of petitioner's credibility, we cannot find that petitioner filed a 1987 return on or about January 7, 1989. Since petitioner has not established that he filed his 1987 return on or about that date, an addition to tax of 25 percent of the amount of tax required to be shown on his 1987 return may properly be imposed on him pursuant to section 6651(a)(1), unless he shows that his failure to file timely was due to reasonable cause and not due to willful neglect. A failure to file timely is due to reasonable cause, for purposes of section 6651, if the taxpayer exercised ordinary business care and prudence and nevertheless was unable to file the return within the prescribed time. Walter v. Commissioner, 753 F.2d 35, 40 (6th Cir. 1985), affg. Ayres v. Commissioner, T.C. Memo. 1983-202; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect is defined for purposes of section 6651 as a conscious, intentional failure or reckless indifference. United States v. Boyle, 469 U.S. at 245. Petitioner testified that he timely received a Form W-2 *385 from Electritech, which not only listed as wages the compensation he received from that company as an employee, but also listed as "non-wage compensation" his distributive share of that S corporation's income. Petitioner further testified that he was advised by his accountant that such distributive share could not be listed on Form W-2, but had to be listed on Schedule K-1. According to petitioner, the reason he did not timely file his 1987 income tax return was that he was waiting to receive Schedule K-1 from Electritech. Petitioner suggested that, in not timely filing, he was acting on what he believed to be his accountant's advice that it would be "better" to wait for the Schedule K-1. [9]
*386 Taking for the sake of argument petitioner's foregoing testimony at face value, [10] *388 petitioner admitted that he knew the amount of his distributive share of Electritech's income for 1987 from reviewing the Form W-2 which he claimed he received before the time had expired within which he could timely file a return for that year and on which the amount of that distributive share was indicated. Petitioner gave no reason, and we can think of none, why he (or his accountant) could not have prepared, with reasonable accuracy, and filed timely his 1987 income tax return on the basis of the Form W-2 which he testified showed the amount of his distributive share of that company's income.[11] We believe petitioner could have timely filed his 1987 return with a reasonable degree of accuracy based upon that information. If, after having prepared and timely filed his 1987 return on that basis, he were to receive additional information with respect to his distributive share of income and deductions from Electritech, he could have amended his return if necessary. Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982); Beck Chemical Equipment Corp. v. Commissioner, 27 T.C. 840, 859-860 (1957); *387 Fortner v. Commissioner, T.C. Memo. 1993-195; Estate of Campbell v. Commissioner, T.C. Memo. 1991-615; Long v. Commissioner, T.C. Memo. 1978-171. Under the foregoing circumstances, we find that petitioner has not satisfied his burden of proving that his failure to file timely his 1987 return was due to reasonable cause and not due to willful neglect. See United States v. Boyle, supra; Chilingirian v. Commissioner, 918 F.2d at 1255; Walter v. Commissioner, supra. Accordingly, petitioner is liable for the addition to tax under section 6651(a)(1) in an amount equal to 25 percent of the amount required to be shown as tax on his 1987 return. Additions to Tax for Negligence
It is well settled that the taxpayer generally bears the burden under section 6653(a) of proving that any underpayment of tax is not due to negligence or disregard of rules or regulations. Rule 142(a); Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; *389 Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Negligence, for purposes of section 6653(a), has been defined as a lack of due care or a failure to do what a reasonable person would do under the circumstances. Leuhsler v. Commissioner, supra; Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner argues that a taxpayer "may not be charged with that quality of negligence which is required to impose the additions under Section 6653" for "simply a delay in filing a return". Assuming arguendo petitioner filed a return for 1987, there is no dispute that he filed it late. We have previously held that the untimely filing of a return is prima facie evidence that the underpayment of tax for the year for which the return was not timely filed was due to negligence. Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990); see Patronik-Holder v. Commissioner, 100 T.C.     (1993) (slip op. at 13); Condor International, Inc. v. Commissioner, 98 T.C. 203, 225 (1992). This *390 is because a reasonable and prudent person would ordinarily comply with the filing deadline. Patronik-Holder v. Commissioner, supra; Emmons v. Commissioner, supra.Thus, where there is a failure to file timely, the additions to tax for negligence will be upheld unless the taxpayer can demonstrate that the failure to file was reasonable or that he or she acted with ordinary prudence. Condor Intl., Inc, v. Commissioner, supra.
In the instant case, petitioner failed to file timely his 1987 return. For the reasons set forth above, petitioner has not proven that his failure to file timely was reasonable or that he acted with ordinary prudence. Therefore, he has not overcome the prima facie evidence of negligence established by his failure to file timely. Condor Intl., Inc. v. Commissioner, supra; Emmons v. Commissioner, supra.
Based on the entire record as well as our determination of petitioner's credibility, we hold that petitioner has not satisfied his burden of proving that the underpayment of tax for 1987 (the amount of which the *391 parties have stipulated) was due to reasonable cause. Accordingly, petitioner is liable for the additions to tax for negligence that are imposed by section 6653(a)(1)(A) and (B) on such underpayment. To reflect the foregoing and the parties' concessions, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the portion of the underpayment attributable to negligence. Respondent determined that the entire underpayment for 1987 was attributable to negligence. ↩
2. The parties have agreed that there is a deficiency in income tax due from petitioner for 1987 in the amount of $ 7,447. The parties have further agreed that there is an addition to tax due from petitioner for 1987 under section 6654(a) (failure to pay estimated tax) in the amount of $ 329.33.↩
3. Electritech has been referred to differently throughout the record in this case. For example, in some instances, it was referred to as Electrotech Systems Corporation. Despite those various references, it is clear that there is only one S corporation in which petitioner was a 50-percent shareholder and of which he was an employee during 1987.↩
4. Section 6651(a)(1) provides in pertinent part: (a) ADDITION TO THE TAX. -- In case of failure -- (1) to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * *↩
5. The 15 percent is calculated by multiplying five percent times the number of months from October 15, 1988 (the date to which the filing time was extended for petitioner's 1987 return), to January 7, 1989 (the date on which petitioner alleges he filed that return). For this purpose, a fraction of a month counts as one month. Sec. 6651(a)(1)↩. Therefore, three months elapsed from the ultimate due date for petitioner's 1987 return (October 15, 1988) to the date on which he claims he filed a return for 1987 (January 7, 1989).
6. Since there is not sufficient proof in the record to find that petitioner mailed his 1987 income tax return on or about January 7, 1989, we need not address the question whether there would be a presumption of delivery which would arise as a result of proof that a return was mailed. We do note, however, that the United States Court of Appeals for the Sixth Circuit, to which an appeal would lie in this case, has held that the taxpayers' failure to send a return by registered mail as permitted by sec. 7502 precluded them from relying on circumstantial evidence to prove timely filing of their return. Surowka v. United States, 909 F.2d 148 (6th Cir. 1990); see Miller v. United States, 784 F.2d 728 (6th Cir. 1986). Thus, the Sixth Circuit, by whose precedent we are bound in this case (see Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971)), has held that there is no presumption that a properly mailed envelope is delivered in the due course of the mails.
7. Although petitioner's spouse testified that she signed the 1987 return on that date, she did not testify that the return she signed was filed on that date. Rather, petitioner's spouse testified that, after she signed the return, she gave it to petitioner for mailing to the Service.↩
8. In fact, the Service transcript of account does not indicate that any return was ever filed by petitioner for 1987. The parties disagree as to whether a return was ever filed by petitioner for his 1987 tax year. Respondent contends that, although petitioner submitted copies of a 1987 return on June 10, 1991, and August 17, 1992, to the Cincinnati Service Center, such returns do not qualify as petitioner's 1987 return because such copies did not contain original signatures of petitioner (or his spouse). For purposes of deciding the amount of the addition to tax for failure to file that could properly be imposed in this case by section 6651(a)(1), it is not necessary for us to resolve whether the June 10 or the August 17 Form 1040 should be treated as a return filed by petitioner for 1987. This is because both forms were submitted to the Service well past the time by which the maximum addition to tax of 25 percent would already be applicable under section 6651(a)(1)↩.
9. We do not accept petitioner's self-serving, uncorroborated testimony that, in not timely filing his 1987 return, he was relying on the advice of his accountant. Petitioner did not call his accountant as a witness at trial. We infer that, if his accountant had been called to testify, his testimony would have been unfavorable to petitioner. McKay v. Commissioner, 89 T.C. 1063, 1069 (1987), affd. 886 F.2d 1237 (9th Cir. 1989); Pollack v. Commissioner, 47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513↩ (10th Cir. 1947).
10. In so doing, we are not necessarily accepting petitioner's uncorroborated testimony as establishing as facts the matters to which he testified. In fact, we find petitioner's testimony to be inconsistent with other portions of the record and therefore not trustworthy in certain material respects. We have already noted that petitioner's testimony as to when he filed his 1987 return is contradicted by the petition he filed. Another example of petitioner's testimony being inconsistent with other parts of the record relates to his testimony about the Form W-2 which he asserted he received from Electritech and which he claimed showed both his wage compensation and his "non-wage compensation" for 1987. A copy of a Form W-2 received by petitioner from Electritech was attached to the August 17 Form 1040 that petitioner sent to the Service in 1992, the original of which petitioner claims to have filed on or about January 7, 1989. Contrary to petitioner's testimony, that Form W-2, which is not in any way marked as an amended Form W-2, shows only the wage compensation that petitioner received from Electritech as an employee, and not the alleged "non-wage compensation" reflecting his distributive share of that S corporation's income.↩
11. Petitioner has not suggested that the amount which he asserts appeared on this Form W-2 as his "non-wage compensation" was inaccurate.↩