T.C. Memo. 2013-212

UNITED STATES TAX COURT

REGINALD SAMPSON AND GERVEL S. SAMPSON, a.k.a. GERVEL S.
JONES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE,
Respondent

Docket No. 26750-11.                    Filed September 9, 2013.

        Ps failed to report pass-through items from two S corporations
on their original returns; instead they attached statements prepared by
their tax return preparer promising to file amended returns on receipt
of delinquent Schedules K-1, Shareholder's Share of Income,
Deductions, Credits, etc., from the corporations.  R determined I.R.C.
sec. 6662(a) accuracy-related penalties.  Ps claim that there can be no
accuracy-related penalty on account of substantial understatements of
income tax because (1) there exists substantial authority for their
treatment of the corporate income and (2) they adequately disclosed
all relevant facts affecting that tax treatment and there was a
reasonable basis for that treatment.  They also argue that they acted
with reasonable cause and in good faith in failing to estimate and
report income from the corporations.

        Held:  No substantial authority supports Ps' treatment of the
corporate income, nor did they adequately disclose that treatment.

**[*2]**     <u>Held</u>, <u>further</u>, Ps have failed to show that they acted with reasonable cause and in good faith in failing to estimate and report income from the corporations.

<u>Shahen Hairapetian</u>, for petitioners.

<u>Halvor R. Melom</u> and <u>Kathryn A. Meyer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  Respondent determined accuracy-related penalties of $7,589 and $17,508 with respect to petitioners' 2008 and 2009 joint Federal income tax, respectively.  We sustain the determination.

Unless otherwise stated, section references are to the Internal Revenue Code in effect for 2008 and 2009 (years in issue), and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all dollar amounts to the nearest dollar.

FINDINGS OF FACT

<u>Introduction</u>

Petitioners (separately, Dr. Sampson and Mrs. Sampson) were married during 2008 and 2009.  They resided in California when they filed the petition.

**[*3]** They are calendar year taxpayers who, for the years in issue, made joint returns of income.

Dr. Sampson is a medical doctor. During the years in issue, he was the sole shareholder of two S corporations, Montebello Medical Center, Inc. (Montebello), and Reginald Sampson M.D., A Professional Corporation (Sampson PC) (together, corporations). During the years in issue, Mrs. Sampson was a part-time employee of Montebello.

The corporations are both calendar year taxpayers, each filing a Form 1120S, U.S. Income Tax Return for an S Corporation.

Preparation of the Original Returns

Bedig Araradian, a certified public accountant licensed in the State of California, prepared all of the relevant returns for petitioners and the corporations. Mr. Araradian has been preparing returns for Dr. Sampson and the corporations for many years. He receives the information necessary to prepare the corporations' tax returns from Dr. Sampson's administrator, who keeps general ledgers for both corporations using a computer program, QuickBooks, which is available to Mr. Araradian electronically. He also receives copies of the actual documents, such as bank statements and payroll reports, underlying the entries in QuickBooks (source documents), which he believes are necessary to verify the data in QuickBooks

[*4] before he will prepare a tax return.  For neither of the years in issue did either corporation provide source documents to Mr. Araradian before the respective dates on which their Forms 1120S for those years were due.  The corporations' Forms 1120S for those years were delinquent because, without source documents Mr. Araradian would not prepare those returns.

And since he had not prepared the corporations' returns by the dates on which petitioners' 2008 and 2009 Forms 1040, U.S. Individual Income Tax Return (together, original returns), were due, Mr. Araradian did not have the corporations' Schedules K-1, Shareholder's Share of Income, Deductions, Credits, etc., from which to enter pass-through items from the corporations on the original returns.

Consequently, Mr. Araradian prepared the original returns omitting any income or losses passed through to petitioners from the corporations.  He told Dr. Sampson in each case that he was making a statement on the return saying that pass-through items from the corporations were not being included.  The statement that he made on each return is as follows:

> THE ENCLOSED TAX RETURN FOR REGINALD AND GERVEL SAMPSON DOES NOT INCLUDE THE K-1'S FROM MONTEBELLO MEDICAL CENTER, INC. * * * AND REGINALD SAMSPN [sic] MD A PROF CORP * * *.  THE * * * [2008/2009] PERSONAL INCOME TAX RETURN FOR REGINALD AND GERVEL SAMPSON WILL BE AMENDED ONCE THE TAXPAYER RECEIVES THE * * * [2008/2009] K-1'S.

**[*5]**   The original returns did report other items.  Petitioners claimed charitable contribution deductions of $15,000 and $14,700 for 2008 and 2009, respectively.  They reported, overall, $34,330 and $34,246 of total tax liabilities for 2008 and 2009, respectively.  Both returns also listed the names, employer identification numbers, and S corporation status of Montebello and Sampson PC.  Dr. Sampson reviewed the original returns before he and Mrs. Sampson signed them.  He knew that they omitted pass-through items from the corporations.  He was aware of the statement on each original return that he was signing under penalties of perjury and declaring that the returns "[were] true, correct, and complete."  Petitioners filed the original returns on October 19, 2009, and October 21, 2010, respectively.

After filing the original returns, Mr. Araradian repeatedly asked Dr. Sampson for the missing source documents.  After many months, Dr. Sampson ultimately provided all the needed documentation.  Petitioners claim that the delay was due to the renovations made in 2008 and 2009 at Montebello's offices.  Because of the renovations and because of a space shortage at the offices, some records were moved into storage, making it difficult to find and retrieve the missing source documents.  Dr. Sampson participated to a limited extent in providing the missing source documents to Mr. Araradian, but his attention was primarily focused on his medical practice.

[*6] Petitioners' Amended 2008 and 2009 Returns

On October 27, 2010, respondent notified petitioners that their 2008 return had been selected for examination, and on January 14, 2011, he notified them similarly with respect to their 2009 return. Petitioners submitted 2008 and 2009 Forms 1040X, Amended U.S. Individual Income Tax Return (together, amended returns), on January 3 and May 13, 2011, respectively. The amended 2008 return differed from the original 2008 return in that petitioners reported an ordinary loss of $3,019 from Montebello and ordinary income of $98,882 from Sampson PC. The amended 2009 return differed from the original 2009 return in that petitioners reported an ordinary loss of $41,229 from Montebello and ordinary income of $281,854 from Sampson PC. Additionally, petitioners reduced their claimed charitable contribution deductions from $15,000 to $8,185 and from $14,700 to $800 for 2008 and 2009, respectively. Overall, the amended returns reported increases in petitioners' total tax liabilities from $34,330 to $69,408 and from $34,246 to $121,564 for 2008 and 2009, respectively.

Montebello and Sampson PC filed delinquent 2008 and 2009 Forms 1120S on January 4 and May 24, 2011, respectively, reporting income and loss amounts consistent with what petitioners reported on the amended returns.

**[*7]** <u>Deficiencies</u>

On June 23, 2011, respondent made positive adjustments of $41,449 and $91,882 (in both cases, including interest) to petitioners' 2008 and 2009 tax liabilities, respectively. Specifically, for each year, respondent increased petitioners' taxable income by Dr. Sampson's net pass-through income from the corporations reported on the amended return, and he also disallowed certain itemized deductions, including charitable contribution deductions. Petitioners agreed to the assessment of resulting deficiencies, and they paid them.

Thereafter, respondent determined the accuracy-related penalties under section 6662 that are at issue and so notified petitioners. Petitioners assign error to that determination.

OPINION

I.     <u>Introduction</u>

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty (penalty) equal to 20% of the portion of an underpayment of tax attributable to, among other things, negligence or disregard of rules or regulations, or any substantial understatement of income tax. Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one of the grounds set forth in

[*8] section 6662(b).  New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 187 (2009), aff'd, 408 Fed. Appx. 908 (6th Cir. 2010); sec. 1.6662-2(c), Income Tax Regs.

Although petitioners bear the burden of proof, see Rule 142(a), section 7491(c) imposes on respondent the threshold burden to produce evidence showing that it is appropriate to apply the penalty here in question, see Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Petitioners' concessions may be taken into account in determining whether respondent has carried his burden.  See Diaz v. Commissioner, T.C. Memo. 2012-280, at *9.  If respondent carries his burden of production, petitioners then bear the burden of proving any defense to the penalty, such as having reasonable cause for any underpayment and acting in good faith. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 447-448.

II.    Substantial Understatement of Income Tax

A.    Introduction

Section 6662(d)(1)(A) defines a "substantial understatement of income tax" as an understatement in an amount exceeding the greater of 10% of the tax required to be shown on the return or $5,000.  As pertinent, the term "understatement" is defined as the excess of the amount of tax required to be shown on the return over the amount shown.  Sec. 6662(d)(2)(A).  Section

**[*9]** 6662(d)(2)(B) reduces the amount of an understatement by the portion of the understatement for which (1) there is substantial authority for the taxpayer's tax treatment of the item or (2) there is adequate disclosure of the relevant facts affecting the item's tax treatment and there is a reasonable basis for the taxpayer's treatment of the item.

Petitioners concede that, barring the application of section 6662(d)(2)(B), there was a substantial understatement of income tax for each of the years in issue. That concession satisfies respondent's burden of production. See Higbee v. Commissioner, 116 T.C. at 447. Petitioners argue, however, that the understatement is reduced because (1) there exists substantial authority for petitioners' treatment of their income from the corporations and (2) they adequately disclosed the relevant facts affecting that tax treatment and there was reasonable basis for that treatment. See sec. 6662(d)(2)(B).

B.    Substantial Authority

1.    Introduction

Authority for purposes of determining whether there is substantial authority for a taxpayer's treatment of an item includes the Internal Revenue Code, regulations, and cases. Sec. 1.6662-4(d)(3)(iii), Income Tax Regs. In evaluating whether a taxpayer's position regarding treatment of a particular item is supported

**[\*10]** by substantial authority, the weight of authorities in support of the taxpayer's position must be substantial in relation to the weight of authorities supporting contrary positions. Sec. 1.6662-4(d)(3)(i), Income Tax Regs. The substantial authority standard is objective, and the taxpayer's belief that there is substantial authority for his position is irrelevant in determining whether there is substantial authority. Id. This Court has also noted in the past that "an authority is of little relevance if it is materially distinguishable on its facts from the facts of the case at issue." Antonides v. Commissioner, 91 T.C. 686, 702-703 (1988), aff'd, 893 F.2d 656 (4th Cir. 1990).

### 2. Petitioners' Argument

Petitioners failed to report any pass-through items from the corporations on the original returns; instead, they attached statements promising to file amended returns upon receipt of the delinquent Schedules K-1. Eventually, they did file amended returns. Petitioners argue that there is substantial authority for their omitting pass-through items on the original returns since regulations provide that an amount shown on a qualified amended return can reduce or eliminate an underpayment. See sec. 1.6664-2(c)(2), Income Tax Regs. Even if we were to disagree that the regulations are substantial authority for their treatment of the corporate income, petitioners argue that their understatements should be reduced

**[\*11]** or even eliminated because, pursuant to section 1.6664-2(c)(2), Income Tax Regs., the overall tax amounts shown on what they consider to be their returns include the additional corporate income shown on their "qualified amended return[s]", as that term is defined in section 1.6664-2(c)(3), Income Tax Regs.

In support of their argument that there is authority for their decision to attach disclosure statements to their original returns promising to file amended returns later, petitioners also point to several cases involving additions to tax for delinquent returns where we said that the taxpayers could have avoided the section 6651(a)(1) delinquency addition by filing a timely return (even if they lacked sufficient data to make a complete and accurate return), correcting any errors by, subsequently, filing an amended return.

### 3. Respondent's Argument

Respondent disagrees that petitioners have shown substantial authority for their omissions of pass-through items from the corporations on account of their promises to file amended returns. Respondent points out that section 1.6664-2(c)(2), Income Tax Regs., does not say that a taxpayer will be excused from the section 6662(a) accuracy-related penalty if he merely promises to file an amended return in the future; rather, he points out, the regulation provides a safe harbor for a taxpayer who actually does file a "qualified amended return." Further, he argues

[*12] that, for purposes of section 1.6664-2(c)(2) and (3), Income Tax Regs., petitioners' amended returns are not qualified amended returns because they were filed after the date the Internal Revenue Service first contacted them in connection with the examination of the original returns. See sec. 1.6664-2(c)(3)(A), (C), Income Tax Regs. Respondent also argues that any authority that petitioners can garner from the regulations is outweighed by the authority of cases "holding that taxpayers have a duty to report income from all known sources." See, e.g., Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987); Heller v. Commissioner, T.C. Memo. 1994-463, 1994 WL 510095, at *6, aff'd in part, remanded in part without published opinion, 103 F.3d 138 (9th Cir. 1996). Similarly, respondent argues that the cases petitioners cite discuss a different issue--the late-filing addition to tax pursuant section 6651(a)(1)--and so do not represent substantial authority for purposes of section 6662.

4.    Discussion

Respondent is correct on all counts. Section 1.6664-2(c)(2), Income Tax Regs., does not say that a taxpayer will be excused from the accuracy-related penalty if he merely promises to file an amended return in the future. Thus, the regulation is not substantial authority for petitioners' omission of the corporations' pass-through items from the original returns. Moreover, respondent is correct that

**[*13]** petitioners' underpayments of tax are not reduced on account of the amended returns, because neither amended return is a "qualified" amended return.

As pertinent, section 1.6664-2(a)(1), Income Tax Regs., provides that, for purposes of section 6662, the term "underpayment" means the amount of tax imposed over the amount of tax shown by the taxpayer on his return. The term "amount shown * * * by the taxpayer on his return" is defined by section 1.6664-2(c)(2), Income Tax Regs., to include "an amount shown as additional tax on a qualified amended return". Accordingly, if petitioners' amended returns constitute "qualified amended return[s]", then the amounts shown on their 2008 and 2009 returns will increase, and their underpayments for the years in issue will be less. Section 1.6664-2(c)(3), Income Tax Regs., provides in pertinent part:

> A qualified amended return is an amended return * * * filed after the due date of the return for the taxable year * * * and before the earliest of--
>
> (A) The date the taxpayer is first contacted by the * * * [IRS] concerning any examination * * * with respect to the return;
>
> *     *     *     *     *     *     *
>
> (C) In the case of a pass-through item * * * the date the pass-through entity * * * is first contacted by the IRS in connection with an examination of the return to which the pass-through item relates;

**[\*14]** Petitioners filed the 2008 and 2009 amended returns on January 3 and May 13, 2011, respectively. Those dates are several months after October 27, 2010, and January 14, 2011, when, with respect to each original return, respectively, respondent first contacted them concerning an examination. Accordingly, petitioners' amended returns are not "qualified amended return[s]" within the meaning of section 1.6664-2(c)(2) and (3), Income Tax Regs. They do not reduce petitioners' underpayments of tax.

Petitioners cite the following cases as substantial authority in support of their position: Estate of Vriniotis v. Commissioner, 79 T.C. 298 (1982), Krzepina v. Commissioner, T.C. Memo. 1993-356, 66 T.C.M. (CCH) 360, 364 (1993), and Long v. Commissioner, T.C. Memo. 1978-171, 37 T.C.M. (CCH) 733 (1978). Those cases involve the section 6651(a)(1) addition to tax for filing a delinquent return, which addition can be avoided if the taxpayer can show that the delinquency "is due to reasonable cause and not due to willful neglect". The taxpayers therein failed to timely file returns, claiming, among other things, reasonable cause based on the unavailability of pertinent information. On the facts before us in each case, we rejected the taxpayer's defense, and we suggested that the taxpayer would have avoided the section 6651(a)(1) delinquency penalty had he timely filed a return reporting estimates, "based on the best information

[*15] available", which he could correct by filing an amended return when he had better information.  Estate of Vriniotis v. Commissioner, 79 T.C. at 311; see also Krzepina v. Commissioner, 66 T.C.M. (CCH) at 364; Long v. Commissioner, 37 T.C.M. (CCH) at 733.  We are not here dealing with any filing delinquency, and petitioners did not estimate their income from the corporations, even though they had the data from QuickBooks to make an estimate.  Thus, we fail to understand how those cases help petitioners' position.  They are not substantial authority supporting petitioners' omission of pass-through items from the corporations.

  5. Conclusion

Accordingly, we find that petitioners' position is not supported by any substantial authority.

  C. Adequate Disclosure

Adequate disclosure for purposes of section 6662 is made in one of two ways.  A disclosure is adequate either if the disclosure is made on a properly completed form attached to the taxpayer's return, see sec. 1.6662-4(f)(1), Income Tax Regs., or if the disclosure is permitted by annual revenue procedure or otherwise to be made on the tax return itself and is made in accordance with the applicable forms and instructions, see sec. 1.6662-4(f)(2), Income Tax Regs.  If the annual revenue procedure does not permit the disclosure of an item on the face

**[\*16]** of the return, disclosure is adequate only if the disclosure is made on a properly completed Form 8275, Disclosure Statement, or Form 8275-R, Regulation Disclosure Statement, attached to the taxpayer's return for the year the disclosure applies. See sec. 1.6662-4(f), Income Tax Regs.; see also Vianello v. Commissioner, T.C. Memo. 2010-17, 2010 WL 342905, at \*11 (finding no adequate disclosure where taxpayers disclosed the relevant information in a footnote to Schedule C instead of in a Form 8275). Disclosure of a recurring item must be made for each year in which the item is taken into account. Sec. 1.6662-4(f)(3), Income Tax Regs.

Generally, adequate disclosure in the case of items attributable to a pass-through entity is made on a form attached to the entity's return. Sec. 1.6662-4(f)(5), Income Tax Regs. Alternatively, a taxpayer may make an adequate disclosure with respect to income from pass-through entities like S corporations by filing two properly completed Forms 8275 or Forms 8275-R for each entity: "one copy attached to the taxpayer's return * * * and the other copy filed with the Internal Revenue Service Center with which the return of the entity is required to be filed." Id. Petitioners complied with neither alternative.

In Rev. Proc. 2008-14, 2008-1 C.B. 435, and Rev. Proc. 2010-15, 2010-7 I.R.B 404, applicable for 2008 and 2009 returns, respectively, the Commissioner

**[\*17]** has listed certain items for which the requirements for adequate disclosure are less stringent. For items with respect to pass-through entities the disclosure must be on the entity's return. <u>See</u> sec. 1.6662-4(f)(5), Income Tax. Regs. The corporations' returns fail to qualify for this exception because they do not disclose petitioners' failures to report items from the corporations. Nor, if it were relevant, did petitioners make an adequate disclosure of pass-through items on their returns.

D.    <u>Conclusion</u>

Petitioners substantially understated their income tax on the original returns, and barring proof of reasonable cause and good faith, petitioners are liable for the section 6662(a) and (b)(2) 20% accuracy-related penalty for substantial understatement of income tax for the years in issue.

III.    <u>Penalty for Negligence or Disregard of Rules and Regulations</u>

Because we have found that petitioners substantially understated their income tax on the original returns, we need not address petitioners' liability for the section 6662(a) penalty on the ground of negligence or disregard of rules or regulations.

**[*18]** IV.    Reasonable Cause and Good Faith Defense

    A.    Introduction

With exceptions not here relevant, a taxpayer may avoid a section 6662(a) accuracy-related penalty by showing that he acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  Reasonable cause requires that the taxpayer exercise "ordinary business care and prudence" as to the disputed item.  United States v. Boyle, 469 U.S. 241, 246 (1985).  The term "good faith" has no precise definition but means, among other things, (1) an honest belief and (2) the intent to perform all lawful obligations.  E.g., United States v. Hirschfeld, 964 F.2d 318, 322 (4th Cir. 1992).  Those determinations are made on a case-by-case basis, taking into account all pertinent facts and circumstances, including the taxpayer's knowledge and experience.  Sec. 1.6664-4(b)(1), Income Tax Regs.  "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."  Id.  The most important factor is the taxpayer's efforts to assess the proper liability.  Id.

The duty of filing accurate returns generally cannot be avoided by placing the responsibility on an employee or tax return preparer.  See Metra Chem Corp. v. Commissioner, 88 T.C. at 662; Slawek v. Commissioner, T.C. Memo. 1991-338,

**[\*19]** 1991 WL 134805, at \*1 (finding no reasonable cause defense where taxpayers blamed their employees and accountants for erroneous returns), aff'd without published opinion, 972 F.2d 1332 (3d Cir. 1992). A taxpayer, however, may demonstrate reasonable cause through good-faith reliance on the advice of an independent professional, such as a tax adviser, a lawyer, or an accountant, as to the item's tax treatment. Boyle, 469 U.S. at 251; Canal Corp. & Subs. v. Commissioner, 135 T.C. 199, 218 (2010). To prevail, the taxpayer must show that he: (1) selected a competent adviser with sufficient expertise to justify reliance, (2) supplied the adviser with necessary and accurate information, and (3) actually relied in good faith on the adviser's judgment. 106 Ltd. v. Commissioner, 136 T.C. 67, 77 (2011) (citing Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002)), aff'd, 684 F.3d 84 (D.C. Cir. 2012).

The preparer's advice must be based on all pertinent facts and circumstances. Crispin v. Commissioner, T.C. Memo. 2012-70, 2012 WL 858406, at \*10, aff'd, 708 F.3d 507 (3d Cir. 2013). Moreover, reliance on professional advice is unreasonable and does not satisfy the Neonatology test where a taxpayer knew or should have known that the suggested tax treatment was "too good to be true". Sec. 1.6662-3(b)(1)(ii), Income Tax Regs.; see also Gerdau Macsteel, Inc.

[*20] v. Commissioner, 139 T.C. 67, 196 (2012) (citing Neonatology Assocs., P.A. v. Commissioner, 299 F.3d at 234 ("When * * * a taxpayer is presented with what would appear to be a fabulous opportunity to avoid tax obligations, he should recognize that he proceeds at his own peril.")).

### B. Parties' Arguments

Petitioners do not raise reasonable cause as a defense to the portions of their underpayments due to the disallowance of their charitable contribution deductions. They maintain that defense only with respect to the portions of their underpayments resulting from their failure to report income from the corporations.

Petitioners' principal argument is that they acted with reasonable cause and good faith "by making a good faith effort to maintain income and expense records". They rely on Bauer v. Commissioner, T.C. Memo. 2012-156. In Bauer, the taxpayer was a moving man whose poor records were insufficient to substantiate his claimed business expense deductions for contract-labor payments but which, given the circumstances of his profession, indicated to us his good-faith effort to maintain adequate books and records. That, we found, was sufficient to avoid a section 6662(a) penalty for negligence or disregard of rules or regulations, which we described as "including any failure to maintain adequate books and records". Respondent argues that Bauer is inapposite.

[*21]  Alternatively, petitioners argue that they acted with reasonable cause and in good faith "in relying * * * on the advice of * * * [Mr.] Araradian."  They claim that they satisfy the three prongs of the Neonatology test.  The parties do not dispute Mr. Araradian's competence or expertise (the first prong).  The parties disagree, however, about the other two prongs of the Neonatology test.  First, petitioners argue that they supplied their accountant with all the necessary and accurate information via QuickBooks, to which Mr. Araradian had "unfettered" access.  Petitioners further argue that, because of the more than 20 years of collaboration, they in good faith relied on Mr. Araradian's judgment.

Respondent in turn argues that petitioners did not timely provide Mr. Araradian with all the necessary available documentation about the pass-through items from the corporations.  Respondent also questions the good-faith reliance of petitioners who, on the basis of the QuickBooks data as well as past experience, knew that the original returns underreported their income but signed the returns anyway.  Employing the analysis in Metra Chem Corp. v. Commissioner, 88 T.C. at 662, respondent further claims that petitioners did not rely on Mr. Araradian in good faith because the issue here is simply their failure to report income and is not an issue in connection with "some complex transaction".

[*22] C.     Analysis

We agree with respondent that Bauer v. Commissioner, T.C. Memo. 2012-156, is inapposite.  As stated supra section III. of this report, we do not rely on negligence to sustain the accuracy-related penalty.  We are, thus, not directly concerned with the adequacy of petitioners' books and records as a defense to negligence or disregard of rules or regulations, although we note in passing that Dr. Sampson's records retrieval system appears not to have worked to provide Mr. Araradian with the information he needed to timely complete the corporations' and petitioners' returns.  The question is whether petitioners had reasonable cause and acted in good faith in not estimating and reporting income from the corporations, which caused petitioners to underpay their 2008 and 2009 taxes.

Petitioners have failed to convince us that, on the advice of Mr. Araradian, they acted with reasonable cause and in good faith in failing to estimate and in underpaying their tax.  First, there is the question of what advice Mr. Araradian gave petitioners.  Mr. Araradian did not testify that he advised petitioners that they need not estimate and report on their returns income from the corporations.  He testified that he told Dr. Sampson that he was making a statement on the return saying that pass-through items from the corporations were not being included.  We give petitioners the benefit of the doubt and assume that they took Mr. Araradian's

**[*23]** preparation of the returns without the pass-through items as at least an implicit assurance that they need not estimate and report any income from the corporations.

Nevertheless, Dr. Sampson was an experienced taxpayer. He was aware of the statement on each original return that he was signing under penalties of perjury and declaring that the returns "were true, correct, and complete." He knew that, with respect to pass-through items from the corporations, the original returns were, to say the least, not complete. He knew that, in years past, he <u>had</u> reported substantial income from the corporations. He had available to him the QuickBooks from which he, or Mr. Araradian, could have estimated income from the corporations. Petitioners have not convinced us that, even if they understood Mr. Araradian to have been telling them that it was okay to omit income from the original returns, they had a reasonable basis to do so and that they acted in good faith in failing to estimate and report income from the corporations.

D.    <u>Conclusion</u>

Petitioners have failed to show that they acted with reasonable cause and in good faith in failing to estimate and report income from the corporations.

**[\*24]** V.    <u>Conclusion</u>

We sustain the section 6662(a) accuracy-related penalties respondent determined.

<u>Decision will be entered for</u>

<u>respondent</u>.